I'm going to ask you to please speak and project because I may have difficulty hearing you   So, with the court's permission, good morning. My name is Kaitlin McAmis. Can I stop you?  Forgive me for interrupting. Since you said this is your first argument before our court, welcome. Thank you. But also, just so you know how we do things, can you see the clock that'll be ticking down? Yes. So when you look up and it says two minutes, that means two minutes left, but when the clock turns, then you're over time. We'll let you know. Thank you. Okay. Go right ahead. Good morning. May it please the court. My name is Kaitlin McAmis. I'm with Christina Wildeveld's office. I am presenting today on behalf of Ricardo Perez following his appeal from the denial of the motion for relief from judgment pursuant to Rule 60B, excuse me, 60B Subsection 6 based on the attorney abandonment. And with the court's permission, I was going to see if you wanted to just ask questions. Sure. I have a question.  It seems to me that we've got a timeline here, and it's quite detailed and concerning, and you're relying on abandonment to satisfy 60B, all right? So there's quite a history when your client and his mom have affied that their lawyer was dishonest with them and told them he had taken steps that he had not. And during that time, since he'd entered into appearance, your client really couldn't have filed anything, I think, pursuant to the local rule. But then there's a period of time where your client, I think, pretty clearly becomes aware that he's been abandoned, right? That's correct. Correct.  So that's the period of time. I think that's the gap you have to close. In other words, if you just take it as a given that abandonment is an extraordinary circumstance, then my question is, he's got to show diligence. So why did the district court abuse this discussion in finding that your client was not diligent? Thank you. And we are submitting that he was diligent based on not only the timeline before, but when he did start to have that notice, particularly starting around May of 2020. That's when he and his mother were both very persistent in trying to follow up, requesting that the motion be filed. There were increasing difficulties in trying to get the attorney on the phone. Then turning into February of 2021, letters started being returned from the attorney's office. That prompted Mr. Perez and his mother to then immediately reach out and then make a bar complaint. So that shows the kind of diligence, is that they initiated something to get movement on that contact with the attorney, trying to come to some realization of what was happening and why their letters were being returned without any kind of question. And then, as your honors may be aware, bar proceedings are not always a quick resolution. And so between roughly the end of February 2021 and approximately like through July 2021, there was no state bar response to the grievance that was submitted by Mr. Perez and his mother. And so even between that, my client's mother continued to reach out to the attorney. So counsel, we know that the Rule 60B was filed August 16th of 2022, right? That's correct. So what date exactly or approximately do you believe we should start our counting from with regard to when the first date that your client, if acting diligently, should have filed? Are you saying it's actually August 16th, 2022? Or if it's some date before August 16th, what date do you want us to start counting from and saying, obviously, this period of time isn't enough for this motion to have been denied? Well, I understand. Part of Mr. Perez's, I think, frustration and strange timeline is that Mr. Penny was subject to multiple disciplinary actions, not just his own. And so he... But can I just... You're focusing on the disciplinary actions, which, of course, are parallel and really don't have anything to do with what's happening here. So to get to answer Judge Bea's question about when should the clock have started, is it... What are the disciplinary proceedings have to do with that, please? Only as to notice, because prior to the disciplinary proceedings, Mr. Perez was unaware of the status of his case beyond something just very generally there's a plan. So that's... I use that only as... Well, he wasn't unaware. I mean, mom knew and communicated to him in February 2020 that the petition had been dismissed in June of 2019, right? That's correct. That's correct. And I think your client has taken the position that Mr. Penny was reassuring him, no problem, we can get it reinstated. But look at the last eight or nine months, right? Your client's mother requested a refund in November, received a partial refund in December. How do you account for the period from December of 2021 until August of 2022, please? And specifically, Mr. Perez had to locate new counsel, as your honors are probably aware, appointed counsel generally doesn't step in on this kind of matter because of the delay of the time-sensitive issues and because this was initially something where it was supposed to be pursued in federal court, stayed and abated in federal court, and then put into state court. Mixed petition, right? Correct. And so... So did your client argue before the district court that he had trouble finding substitute counsel? No, because he was not able to get different counsel. So he's never been able to address this before the state. Wait a minute, when you filed the 60, I didn't ask a good question. Going back to Judge Bea's point, the August of 2022, that's a Rule 60B motion, right? Does that motion, did it argue that he had trouble finding new counsel or affording new counsel or where is that in the record, please? And I apologize, I understand what you're asking. We would submit that that was argued in that Rule 60B and that it's from the excerpt of the record. We've cited at 2-excerpt of the record, pages 197 to 213, that he did have trouble identifying and locating new counsel, that that was a barrier to him and that he had to retain counsel to do so. 197 to 213? Yes. Is there, because there's nothing in his declaration about that, right? No, there's nothing in his declaration about that. Is there anything in mom's declaration about that? It's brief indulgence. It is my recollection it is, I'm trying to find the site. Because mom was the moving party really on all of this. It seems to me this is the crux of it. If you perhaps would like to save some time and when you come back, you can do this search and answer Judge Bea's question. I will do that. When you come back to the microphone. I don't mean to cut you off, but it seems like that's going to take a little digging. I appreciate that. Okay. Okay. We'll hear from opposing counsel, please. Good morning. May it please the court, my name is Brooke Jorgensen and I represent the respondents in this matter. Your honors, Perez waited an unreasonable amount of time to file his rule 60B6 motion regardless of which day he claims he was abandoned. However, the district court was not, was it correct in concluding Perez should have recognized abandonment by February 2021, which I will refer to as the letter date, rather than November 2021, which I'll refer to as the proposed date. Does that mean you think that the clock going back to Bennett's question, the clock should have started in November of 2021? I believe it should have started in February when he wrote the letter. However, they argued it should have started in November. I thought you said it the other way around. That's helpful. Go right ahead. Okay. First, Perez bases his argument on a subjective and self-serving belief that he didn't recognize that he had been abandoned. However, the standard is that of a reasonable person. In his letter, he expressed that attempts to communicate had been unsuccessful for a long time and nothing at all seems to have been done with this case. He even stated, if I do not hear from you, I'm planning on doing what I can to figure out a way to move on and get things done. Was he in jail the whole time? Yes, he was in prison the whole time. So that's a factor, right? It's relevant that he was in jail where it makes things more difficult, right? Yes. And Perez, or Penny, his attorney was very hard to get a hold of. Well, his attorney, was his attorney eventually disbarred? He was suspended, yeah. So I mean, he had an attorney who abandoned him, but sort of was writing him lulling letters or having lulling communications with him and mom, right? Yes. And he's in jail. The attorney? No. Petitioner. Petitioner.  Okay. Yeah. Yes. Yeah. Well, he's in jail and he's represented by counsel. So pursuant to the local rules, he really couldn't have filed anything himself. That is true. Yes. Okay. Was he ever in administrative segregation? Do we know that? I do not believe that is in the record. Thank you. The last communication, while there was communication sporadically throughout Penny's representation, he completely stopped communicating with him after that letter. So-  After what letter? The February letter? The February letter. Yes. But the February letter is about the fact that he had stopped communicating. Yes. And- So when's the last time that Mr. Perez heard from Mr. Penny? It was February 18th, 2021, when he sent, well, it was through his mother. So Perez, Penny sent a text to his mother, February 18th, 2021, and that was the last communication. Okay. A reasonable person would have known if their attorney stopped all communication that they had been abandoned, and they would have started pursuing their rights diligently at that point. And to the bar complaint, Perez should have known this was not enough to pursue his rights diligently. He filed a timely pro se petition in the federal court before this, and he should have known that the bar complaint just wasn't enough to pursue his rights. Can you explain that part to me? Because I spent some time thinking about that. How does a lay person know what the function is of the bar complaint? What else? Why is that so illogical that a lay person would complain to the bar? He wants to get a hold of his lawyer, wants action, can't get the guy to respond. I think at this point, Perez had done everything he needed to, or he tried everything he could, and doing this and not receiving a response after filing the bar complaint, he should have known that he needed to do something else. Well, that's what you told me, but my question is, why do you think he should have known? Did he get a response from the bar that said, we can't help you, or did he? It's not, I'm not trying to give you a hard time. I'm trying to understand why you come to that conclusion. I know his mother was communicating with the bar, and the reason they claimed that he should recognize abandonment was because Penny hired counsel for that bar disciplinary hearing. Is it in the record, and I apologize for not knowing this, what his education level was? I'm not sure. He was 18, I think, though, when the crime happened. So he was pretty young when it happened. No, I'm talking about, well, anyway, okay. Are you, you're not contending that abandonment under, for example, Maples or some of our other authorities, that abandonment could satisfy the Rule 60B6 standard, are you? No, but not alone. Okay, wait a minute, so I hear you clearly arguing that Mr. Perez was not diligent. Are you also arguing that this does not, this fact pattern does not, abandonment would not satisfy Rule 60B6? No, we agree that he was abandoned. Oh, you do, okay. Yes, yes. I think the difficulty with the crux of this case is when he was abandoned and whether he was diligent after that point. So respondents believe that he was abandoned, and when he wrote that letter, he should have known about abandonment. A reasonable person would have known abandonment. That letter being the February 2021 letter? Yes. However, even if we go off the proposed date, we still believe that he waited unreasonable time to file the motion. Was there a finding that he's indigent? I don't believe so. I'm not sure if he applied to get indigent. Who represented him in this underlying case? He was indigent under, in his trial court, I think, yes. But obviously this lawyer, the lawyer who abandoned him, there's plenty in the record that he was paying him. Yes. Well, his mom was paying him. Yes, his family was paying him. And he requested a refund. So she got a partial refund as of December. And that's when he also got his files back. And then it took an additional eight months to file the motion after that. A reasonable person would not have waited that long to file a motion when they knew this was important. Well, let me ask you about that. During that eight months, was the status of his case that opposing counsel still had a, I'm sorry, that his counsel, Penny, still had an entry of appearance? I believe so. Yeah, I don't think he tried to substitute or tried to withdraw him. There was no action on the case from the time the motion was dismissed to the time they filed the motion. So your position is that he could have filed something anyway? Yes, or contacted the court. Filed, but he filed in August. Yes. Yeah, present current counsel knew the petition had been dismissed almost three years prior, and instead of filing the motion as soon as possible, Perez waited two months to hire counsel and it took an additional seven months to file the motion. This just was not reasonable. I have a question. How did the eight months from December of 2021 until the time of file, the action August 2022, affect any evidence that was available on the motion? I mean, just it's a passage of nine months, but I mean, did witnesses die or did memories fade? I mean, it's likely this case, the crime happened 12 years ago, and due to his delay and not realizing an abandonment, we have three more years of time between the crime and when a new trial might be granted if this, the petition were granted. And his argument that he wanted to pursue, I think, was going to take a pathologist's testimony. He's wanting to argue that the first shot, which was accidental, caused the death. Yes. And your position in response to Judge Bea's question is that that state was going to be prejudiced in pursuing or defending against that? If the petition is granted and the state has to retry the case, I think they would be prejudiced by that. Yes. I also think it would be unfair to the victims who would have to relive a crime that happened 12 years ago. If there are no other questions, I ask the court to affirm. It doesn't look like there are. Thank you. Thank you. If you can let me know when the clock resumes, may I address the court? Go right ahead. Thank you. You'd asked me to look up on the Ms. Duran's declaration. So that is in the record to, excerpt of the record, 177 through 178, and also 181. It doesn't, in as many words, say I specifically had trouble finding counsel. It was expressing the difficulty in getting new counsel after waiting so long for the partial refund. Page exactly, after waiting for the refund, where do I see that here? It's, I believe it's 181. It's not 181. OK. I will continue looking for that, but I have it listed as 181. I did want to just briefly address two of the questions that you asked, respondent. As far as educational level, it's not in the record. He was young. There was a question about ADSEG. He was not ADSEG, and that's not in the record. But also, during this time period, there was the 2000 COVID lockdown. And so that means that the inmates in prison were not accessing law libraries, were locked down most of the day, and did not have the ability to just go out and make frequent contact or phone calls. Was that argued to the district court? It was not. Ms. McCamas, as I understand it, your client says that he didn't commit the second degree murder. The man was killed by an accidental shot. And my question is, what evidence was lost in those, in that year from, a year and a half, from February 19, 2021, when he wrote the letter, to August 2022, regarding the fact of whether a pathologist would find that the shot was accidental? And I don't believe that any evidence was lost, because this was- And did the pathologist die in the meantime? Did he move to Nebraska? I mean, was there any factual basis for saying that evidence was lost? The pathologist did not die. I don't think that the judge has to make that determination. But I was just curious as to whether there were any material facts which changed in the passage of time. I don't believe there was. I'm not arguing that. Thank you. If the court has any other questions, I would be happy to answer them. I apologize that that site is- Well, setting aside the site, because we've got the record. We've got the whole record right here. Is it your understanding that the facts that we were asking about, arguments that may have been made in the 60B motion, is it your understanding that those are contained in the mother's affidavit? Or where do you want us to look? It's the mother's affidavit. All right. Thank you. Thank you very much. If there are no further questions from my colleagues, it doesn't look like there are, we'll take this matter under advisement and move on to the- Thank you so much. Very much a pleasure to appear in front of you. Safe travels back. Thank you. Thank you both.
judges: BEA, CHRISTEN, BENNETT